UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 6:07-154-KKC

RHONDA BECKNELL, PLAINTIFF,

v. **OPINION & ORDER**

BOARD OF EDUCATION OF OWSLEY
COUNTY, KENTUCKY, et al., DEFENDANTS.

* * * * * * * * *

This matter is before the Court on the Motion for Partial Summary Judgment (Rec. No. 18) and the Motion for Summary Judgment (Rec. No. 28) filed by the Defendants. For the following reasons, the Court will DENY both motions.

I.  FACTS.

The Plaintiff Rhonda Becknell is currently a teacher at Owsley County Elementary School. (Rec. No 28, Defs.' Mem. at 4).[1] The Defendant Teresa Barrett is the principal of the Owsley County High School (the "High School"). In November 2005, the Plaintiff applied for the vacant position of assistant principal at the High School. There were at least two other applicants: elementary school art teacher Chad Mason and high school agriculture teacher Alan Dale Taylor.

The school's site-based decision-making council considered the applications at a meeting on December 13, 2005. The council includes Barrett, who is its chairperson; James Barrett, teacher representative; Tina Cornwell, teacher representative; James Green, teacher representative; Kimberly

---

[1] The Defendants did not file in the record any of the evidence cited in their memorandum in support of their Motion for Summary Judgment. This alone is sufficient reason to deny their motion. Nevertheless, for purposes of this Opinion, unless the Plaintiff contested a fact asserted by the Defendants in their memorandum, the Court has assumed all such facts can be supported by evidence.

Campbell, parent representative; and Shana Marshall, parent representative. All of the council members were present at the December 13, 2005 meeting except for Marshall.

At the December 13, 2005 meeting, the council decided to leave the hiring decision to Barrett. (Rec. No. 28, Defs.' Mem. at 6). *See also* KRS § 160.345(h) (providing that "[f]rom a list of applicants submitted by the local superintendent, the principal at the participating school shall select personnel to fill vacancies. . . ."). The Defendants asserts that Barrett stated at the meeting that she had concerns about the Plaintiff because the Plaintiff had criticized the principal of Owsley County Elementary School when the Plaintiff was the assistant principal there. Barrett also asserts that she had concerns because the Plaintiff told her she felt free to disregard the principal's policies at the elementary school if she did not agree with them. Finally, Barrett asserts that she was hesitant to hire the Plaintiff because she had observed the Plaintiff "ignoring her administrative duties" and because the principal of the elementary school told Barrett that the Plaintiff was unreliable. (Rec. No. 28, Defs.' Mem. at 3).

Council member Cornwell testified that Barrett also stated at the council meeting, "I'd rather have a man than a woman because of disciplinary issues. When a male student gets in trouble, you know, a male teacher will have to be called out to be a witness or to help with the situation." (Rec. No. 33, Response, Ex. D, T. Cornwell Dep. at 17). Cornwell further testified that when she asked Barrett why she did not want to hire the Plaintiff, Barrett stated, "I really prefer a male." (Rec. No. 33, Response, Ex. D, T. Cornwell Dep. at 27).

Council member Campbell testified that the council discussed the fact that the assistant principal would discipline students and that "with Mrs. Barrett being female, it would be helpful to have a male to discipline more with the males students and the female with the female students."

2

(Rec. No. 33, Response, Ex. C, Campbell Dep. at 18). Council member Green testified that, when Barrett was discussing her preferences for the assistant principal position, she commented, "I really need a man." (Rec. No. 33, Response, Ex. F, Green Dep. at 20, 22). Barrett denies making these statements. (Rec. No. 33, Response, Ex. B, T. Barrett Dep. at 125).

Barrett ultimately hired Mason, who is a male, for the position. The Defendants state that Barrett had previously worked with Mason and was impressed with the way he handled disciplinary issues and other matters. (Rec. No. 28, Defs.' Mem. at 4). During her interview of Mason, Barrett learned that he had not taken the tests necessary to obtain his principalship certification. (Rec. No. 28, Defs.' Mem. at 4). However, the Defendants assert that the school district had previously hired individuals on alternative or temporary certifications. (Rec. No. 28, Defs.' Mem. at 4). The Defendants also assert that Mason had taken all of the required classes to be assistant principal (Rec. No. 28, Defs.' Mem. at 7). They further assert that Mason was properly certified for the position after being hired by Barrett. (Rec. No. 28, Defs.' Mem. at 4). There is no dispute that the Plaintiff was certified to serve as assistant principal at the time that Barrett hired Mason.

Becknell charges that, with these actions, the Defendants discriminated against her on the basis of her gender in violation of 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the Kentucky Civil Rights Act ("KCRA"), KRS 344.040, *et seq*. She asks that the Court order the Defendants to place her in the assistant principal position. She also seeks past and future lost wages and benefits; damages for mental anguish, emotional distress, embarrassment and humiliation; punitive damages; and attorney fees and costs.

The Defendants have filed a Motion for Partial Summary Judgment, in which they ask the Court to rule that the Plaintiff is not entitled to punitive damages and have also filed a Motion for

Summary Judgment in which they ask the Court to rule in their favor on all the claims asserted by the Plaintiff in her Complaint.

  II.  **DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT.**

  A.  **STANDARD.**

Under Fed. R. Civ. P. 56, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 322-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Rule

56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

In considering a motion for summary judgment, the court must view the facts and draw all inferences therefrom in a light most favorable to the nonmoving party. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The moving party must show conclusively that there is no genuine issue of material fact. *Id.* However, at the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter. *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249). The Court is not to judge the evidence or make findings of fact. *60 Ivy Street Corp.,* 822 F.2d at 1435-36. Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

"The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). "The nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris,* 260 F.3d 654, 665 (6th Cir. 2001).

    **B.**    **ANALYSIS**

    **1)**    **The Defendants' Motion for Partial Summary Judgment.**

In their Motion for Partial Summary Judgment (Rec. No. 18), the Defendants ask the Court to find that the Plaintiff is not entitled to punitive damages as a matter of law. They argue that punitive damages are not available under the KCRA. In her response, the Plaintiff points out that she has asserted a claim under both the KCRA and Title VII. Punitive damages are available for certain classes of Title VII discrimination claims. *See Kolstad v. American Dental Ass'n*, 527 U.S. 526, 534 (1999); 42 U.S.C. § 1981a(a)(1). The Defendants' argument that the Plaintiff is not entitled to punitive damages is based solely on their assertion that such damages are not available under the KCRA. Accordingly, their Motion for Partial Summary Judgment must be denied.

### 2) The Defendants' Motion for Summary Judgment.

### a) Direct Evidence of Discrimination.

In their Motion for Summary Judgment (Rec. No. 28), the Defendants assert that the Court should rule in their favor on both the Title VII and KCRA claims asserted by the Plaintiff. Because the KCRA "mirrors" Title VII, it is analyzed in the same manner. *Smith v. Leggett Wire Co.*, 220 F.3d 752, 758 (6th Cir.2000) (citing *Kentucky Commission on Human Rights v. Kentucky*, 586 S.W.2d 270, 271 (Ky.Ct.App.1979)).[2]

The Plaintiff can prove her claims through either direct evidence of discrimination, or through the *McDonnell Douglas* burden-shifting analysis. *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003). Under *McDonnell Douglas* – the circumstantial evidence approach – the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *McDonnell*

---

[2] The Kentucky Civil Rights Act makes it unlawful for an employer "to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's. . . sex. . .." K.R.S. 344.040. Likewise, Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's. . .sex. . . ." 42 U.S.C. § 2000e-2(a)(1).

6

*Douglas v. Green*, 411 U.S. 792, 802 (1973). To establish a prima facie case, the plaintiff must show that (1) she is a member of a protected class; (2) that she was qualified for the job; (3) that she suffered an adverse employment decision; and (4) that the job was given to a person outside the protected class. *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001).

Establishment of the prima facie case creates a presumption that the employer unlawfully discriminated against the employee. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). Once a plaintiff proves her prima facie case, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action. *McDonell Douglas*, 411 U.S. at 802-03.

If the defendant meets its burden, the burden shifts back to the plaintiff to show that the reason proffered by the defendant was not its true reason but merely a pretext for discrimination. *Id.* at 804-05. A plaintiff can show pretext "either directly by persuading the [trier of fact] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. Once the defendant meets its burden, the *McDonnell Douglas* framework is no longer relevant. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510 (1993). The trier of fact simply proceeds to decide the ultimate question: whether the plaintiff has proved that the defendant intentionally discriminated against him. *Id.* at 511.

The *McDonnell Douglas* framework applies only when the plaintiff can produce only circumstantial evidence of discrimination. "If a plaintiff can produce direct evidence of discrimination then the [McDonnell Douglas] paradigm is of no consequence." *Kline v. Tennessee Valley Authority*, 128 F.3d 337, 349 (6th Cir. 1997). "Where a plaintiff presents direct evidence of

discriminatory intent in connection with a challenged employment action, 'the burden of both production and persuasion shifts to the employer to prove that it would have terminated the employee even if it had not been motivated by impermissible discrimination.'" *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003)(quoting *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir.2000).

Direct evidence is evidence that proves the existence of a fact without any inferences. *Rowan v. Lockheed Martin Energy Systems, Inc.*, 360 F.3d 544, 548 (6th Cir.2004). "Direct evidence of discrimination is that 'evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's action.'" *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir.2003) (quoting *Jacklyn v. Schering-Plough Health Care Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir.1999)). "Consistent with this definition, direct evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Johnson*, 319 F.3d at 865.

"For example, a facially discriminatory employment policy or a corporate decision maker's express statement of a desire to remove employees in the protected group is direct evidence of discriminatory intent." *Nguyen*, 229 F.3d at 563. However, "isolated and ambiguous statements. . . are too abstract, in addition to being irrelevant and prejudicial, to support a finding of [ ] discrimination." *LaPointe v. United Autoworkers Local 600*, 8 F.3d 376, 380 (6th Cir.1993) (quoting *Gagne v. Northwestern Nat'l Ins. Co.*, 881 F.2d 309, 314 (6th Cir.1989)). *See also, Taylor v. Board of Educ. of Memphis City Schools*, 240 Fed. Appx. 717, 720 (6th Cir. 2007)(finding that statement by school administrator that she hired a white applicant "to maintain racial balance" constitutes

direct evidence of discrimination); *Needy v. Louisville/Jefferson County Metro Govt.*, 2007 WL 1651985, at * 2 (W.D. Ky. 2007)(statement by Fire Department major that she would have to hire females as dispatchers because there were not enough bedrooms for males constitutes direct evidence of a discriminatory motive).

Barrett's alleged statements that she preferred to hire a male and really needed a man in the position of assistant principal is evidence which, if believed, requires the conclusion that discrimination was at least a motivating factor in her decision to hire Mason instead of Barrett. Thus, summary judgment on the issue of whether the Defendant's discriminated against the Plaintiff is inappropriate. The evidence offered by the Plaintiff at least creates an issue of fact regarding Barrett's motivations in hiring Mason instead of the Plaintiff.

Furthermore, even if Barrett's alleged statements regarding her preference for hiring a male were not regarded as direct evidence of discrimination, the Defendants would nonetheless not be entitled to summary judgment under the *McDonnell Douglas* framework. The Plaintiff has established a prima facie case of discrimination. The Defendants have countered with a legitimate, nondiscriminatory reason for hiring Mason instead of the Plaintiff, i.e., the Plaintiff's alleged poor performance as assistant principal at the elementary school.

Nevertheless, the Plaintiff has responded with sufficient evidence of pretext to submit to a jury the issue of whether the Defendants were motivated by a discriminatory purpose when they hired Mason instead of the Plaintiff. This evidence includes Barrett's alleged statements regarding her preference for hiring a male and a letter written by the principal at the elementary school which positively evaluates the Plaintiff's performance as assistant principal, stating, among other things, that "[a]ny task I have asked [the Plaintiff] to do, she has completed the task with great precision and

timeliness." (Rec. No. 33, Response, Ex. A, Becknell Dep. at Ex. 1).

> **b)** **Whether Defendants have Established as a Matter of Law that they Would Have Hired Mason Even if they had not Discriminated on the Basis of Sex.**

The Defendants next argue that, even if the Plaintiff can prove gender played some role in their decision to hire Mason, then the Court should rule on summary judgment that she is not entitled to damages but instead may only seek injunctive and declaratory relief and attorney fees and costs.

Here, the Defendants argue that the Plaintiff's claim is a so-called "mixed motive," claim which applies where "both legitimate and illegitimate reasons motivated" the employer's decision at issue. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 711 (6th Cir. 2006)(quoting *Desert Palace v. Costa*, 539 U.S. 90, 93 (2003)). Such claims were first recognized by the Supreme Court in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)(plurality opinion) and were subsequently codified by Congress at 42 U.S.C. § 2000e-2(m) which provides that a plaintiff can assert a title VII claim by "demonstrat[ing] that race, color, religion, sex or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." *See Wright*, 455 F.3d at 711.

However, Title VII also provides an affirmative defense for the employer in mixed-motive cases at 42 U.S.C. § 2000e-5(g)(2)(B) which limits the employer's liability to declaratory or injunctive relief and attorney fees and costs where the employer establishes that "it would have taken the same action in the absence of the impermissible motivating factor." 42 U.S.C. § 2000e-5(g)(2)(B). *See Desert Palace*, 539 U.S. at 94 (stating that, if an individual proves a mixed-motive claim, then "the employer has a limited affirmative defense that does not absolve it of liability, but restricts the remedies available to a plaintiff. . . [to] include only declaratory relief, certain types of

injunctive relief, and attorney's fees and costs.").

In *Wright*, the court stated that the "ultimate question at summary judgment on a mixed-motive case is whether the plaintiff has presented evidence, direct or circumstantial, from which a reasonable jury could logically infer that a protected characteristic was *a motivating factor* in the defendant's adverse employment action against the plaintiff." *Wright*, 455 F.3d at 713 (brackets, quotations and citation omitted).

As discussed above, the Plaintiff has presented evidence of discrimination from which a reasonable jury could logically infer that gender was a motivating factor in Barrett's decision to hire Mason instead of the Plaintiff. To succeed on the affirmative defense provided by Section 2000e-5(g)(2)(B), the Defendants must show that they would have hired Mason instead of the Plaintiff even if they had not discriminated on the basis of sex during the hiring process. The Plaintiff's evidence of discrimination creates at least an issue of fact as to whether the Defendants would have hired Mason instead of the Plaintiff even if gender had not been a consideration. Accordingly, the Defendants' Motion for Summary Judgment on this issue must be denied.

### c)     The Bona Fide Occupational Qualification Exception.

Next, the Defendants argue that, even if gender motivated their decision to hire Mason instead of the Plaintiff, their actions fall under the "bona fide occupational qualification," or BFOQ, exception to Title VII's prohibition against discrimination on the basis of sex found at 42 U.S.C. § 2000e-2(e).  That provision permits gender-based discrimination  "in those certain instances where. . . sex. . . is a bona fide occupational qualification reasonably necessary to the normal operation of that particular business or enterprise." 42 U.S.C. § 2000e-2(e). "[T]he BFOQ defense is written narrowly, and is to be read narrowly." *Everson v. Michigan Dept. of Corrections*, 391 F.3d 737, 747-

48 (6th Cir. 2004); *See also Dothard v. Rawlinson*, 433 U.S. 321, 334 (1977)(the BFOQ exception is "meant to be an extremely narrow exception to the general prohibition of discrimination on the basis of sex." ) The employer has the burden of establishing a BFOQ defense. *Everson*, 391 F.3d at 747-48.

In order to qualify for the defense, the Defendants must establish 1) "a basis in fact for its belief that gender discrimination is reasonably necessary – not merely reasonable or convenient – to the normal operation of its business." *Everson*, 391 F.3d at 747- 48.

The employer can meet this requirement by showing that a) all or substantially all members of one gender would be unable to perform safely and efficiently the duties of the job involved; b) that it is impossible or highly impractical to determine on an individualized basis the fitness for employment of members of one gender; or c) that "the very womanhood or very manhood of the employee undermines his capacity to perform a job satisfactorily." *Id.*

Second, the employer must establish that the gender qualification "relate[s] to the essence, or to the central mission of the employer's business." *Id*

Third, the employer must establish that no reasonable alternatives exist to discrimination on the basis of sex. *Id*

The Defendants argue that it is "reasonably necessary" to the normal operation of the high school to hire only males for the assistant principal position. They argue that this is because the policies of the Owsley County School system require that a male at least be present when male students are being disciplined. (Rec. No. 28, Def.s' Mem. at 19-20). It is not clear from the Defendants' pleadings whether a male must also actually administer the discipline.

The Defendants state that, pursuant to the High School policy, administrators do all

disciplining of students and that this is one of the "largest roles of administrators" at the school. (Rec. No. 28, Def.s' Mem. at 19-20). They further argue that, if the assistant principal is not a male, then a male teacher would have to be called away from his teaching duties every time a male student had to be disciplined.

Based on the record before it, however, the Court cannot find as a matter of law that it is reasonably necessary to hire only males for the High School assistant principal position. The Defendants assert that the Owsley County Board of Education requires that a male be present when male students are disciplined and they cite to page 37 of Tina Cornwell's deposition as evidence of this policy. (Rec. No. 28, Mem. at 7). That page of Cornwell's deposition is not in the record. On page 28 of her deposition, Cornwell testified that she "guessed" that two females couldn't discipline a male student in cases of corporal punishment. (Rec. No. 33, Response, Ex. D, Cornwell Dep. at 28).

Chad Mason, the newly hired assistant principal, testified that a male must paddle male students and that a male witness must be present when that occurs. (Rec. No. 33, Response, Ex. J, Mason Dep. at 61). He testified that he is the person at the high school who paddles male students. (Rec. No. 33, Response, Ex. J, Mason Dep. at 57). He testified that this occurs "maybe once a month, once every three weeks. Maybe not – not very often." (Rec. No. 33, Response, Ex. J, Mason Dep. at 57). This does not establish as a matter of law that it is reasonably necessary that only males fill the position of assistant principal at the High School. Nor does this establish that the hiring of only males for the assistant principal position relates to the essence, or to the central mission of the employer's business. It appears that the only form of punishment implicated is paddling and it further appears that paddling is not done frequently.

Finally, the Defendants have not established that there is no reasonable alternative to hiring only males for the position. Mason testified that, when he paddles male students, he generally asks both a police office and a male teacher to be present. (Rec. No. 33, Response, Ex. J, Mason Dep. at 57-58). Thus, it appears that two males other than the assistant principal are generally available to both administer and witness the paddling of male students. Furthermore, the assistant principal position was vacant for nearly two years before Mason was hired. During that time period, the school must have had some alternative means of paddling male students that did not require a male assistant principal.

Further, neither the advertisement placed by the Defendants in the local paper for the position nor the job posting on the Kentucky Department of Education website indicated that only males would be considered for the position. (Rec. No. 33, Response, Ex. B, Barrett Dep. at Ex. 4, 10). It is clear that, going into their December 13, 2005 meeting, at least some of the other members of the council did not believe that being male was a requirement for the position. At that meeting, some of the council members suggested the Plaintiff for the position. (Rec. No. 33, Response, Ex. D, Cornwell Dep. at 17).

Accordingly, based on the record before it, the Court cannot find that being male is a bona fide occupational qualification for the assistant principal position that is reasonably necessary to the normal operation of the High School.

### III.    DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 11.

Within their Motion for Summary Judgment, the Defendants state:

Importantly, [the Plaintiff] admitted that she had no direct evidence or even circumstantial evidence of discrimination prior to filing her complaint. Under Fed. R. Civ. P. 11, a litigant must have a reasonable and legitimate basis in fact and law

    for filing a legal pleading, such as a complaint, and that the fact that [the Plaintiff] had no such basis prior to filing her complaint is grounds for dismissal of this action.

(Rec. No. 28, Defs.' Mem. at 11).

    In their Reply brief, the Defendants again argue that "Rule 11 forbids the initiation and continuation of litigation based on such a dearth of supporting facts, which requires dismissal in this case." (Rec. No. 34, Reply at 5).

    Rule 11 (b) provides the following:

    By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

    (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

    (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

    (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

    (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

    However, the rule also requires that:

    A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets.

Fed. R. Civ. P. 11(c)(2).

    To the extent that Defendants are making a motion under Rule 11 within their Motion for

15

Summary Judgment, it must be denied. If the Defendants seek relief under Rule 11, they must do so as provided under the Rules.

IV.     **CONCLUSION.**

For all the above reasons, the Court hereby ORDERS as follows:

1)      the Defendants' Motion for Partial Summary Judgment (Rec. No. 18) is DENIED;

2)      the Defendants' Motion for Summary Judgment (Rec. No. 28) is DENIED; and

3)      the Defendants' Motion for Sanctions under Federal Rule of Civil Procedure 11 is DENIED.

Dated this 29th day of April, 2008.

Signed By:
*Karen K. Caldwell*   KKC
**United States District Judge**